**The below described is SIGNED.**

**Dated: September 30, 2013**  

**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

---

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>C.W. Mining Company dba Co-Op Mining Company,<br><br>　　　　　　　　　　Debtor, | Bankruptcy Number: 08-20105<br><br>Chapter 7<br><br>Judge R. Kimball Mosier |
| Kenneth A. Rushton, Chapter 7 trustee<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>Defendants re C.W. Mining Company Coal Proceeds<br><br>　　　　　　　　　　Defendant | Consolidated Adversary Proceeding No. 11-8002<br><br>**FINDINGS AND CONCLUSIONS REGARDING COAL PURCHASERS' MOTION FOR SUMMARY JUDGMENT** |

Tennessee Valley Authority (TVA), Intermountain Power Agency (IPA), and

Commonwealth Coal Services, Inc. (Commonwealth), collectively referred to as the Coal

Purchasers, seek summary judgment on the narrow issue of whether Standard Industries Inc. had authority to receive payments from the Coal Purchasers between January 8, 2008, the day that the involuntary petition was filed in this case, and September 26, 2008, the date on which the case was converted to Chapter 7 (Gap Period). The answer is yes and the motion will be granted.

## I. JURISDICTION

The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1334. The Motion seeks an order of this Court pursuant to 11 U.S.C. § 506(b)[1] and is a civil proceeding arising under Title 11. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (E), (F) & (O) and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. § 1408 and 1409.

## II. UNDISPUTED FACTS

1.  C.O.P. Coal Development Company (C.O.P.) and C.W. Mining Company (Debtor) entered into a Coal Operating Agreement in March 1997 covering the Bear Canyon Mine (Mine).

2.  Standard acted as the Debtor's agent for the sale of coal beginning as early as 2001.

---

[1] Statutory references herein are to Title 11 of the United States Code, unless stated otherwise.

3. On March 5, 2007, the Debtor and Standard entered into a Coal Sales Agency Agreement (Agency Agreement). The Agency Agreement appoints Standard as the Debtor's exclusive sales agent for coal mined during the term of the Agency Agreement.

4. Although the Agency Agreement contains ambiguities, it is not ambiguous with respect to Standard's agency relationship with the Debtor for the sale of coal and the collection of payments on coal purchases.

5. The Debtor entered into coal purchase agreements with various customers, including TVA, IPA, and Commonwealth, and directed these customers to pay Standard for all coal purchased pursuant to these agreements.

6. The Coal Purchasers paid Standard for coal deliveries made pursuant to coal purchase agreements with the Debtor.

7. On October 30, 2007, Aquila, Inc. (Aquila), a purchaser of coal mined at the Debtor's facility, obtained a $24,841,988 judgment against the Debtor in the United States District Court for the District of Utah (District Court Action).

8. On November 16, 2007, the United States District Court for the District of Utah issued a writ of garnishment (Writ of Garnishment) which was served on TVA. The Writ of Garnishment directed TVA to not pay the Debtor money that is due to the Debtor.

9. On December 18, 2007, the United States District Court for the District of Utah issued a second Writ of Garnishment, which was served on TVA. The second Writ of Garnishment directed TVA to not pay the Debtor money that is due to the Debtor presently or due to the Debtor in the future.

10. On January 8, 2008, Aquila and other creditors filed an involuntary chapter 11 petition against the Debtor.

11. There is no assertion by any party that either the Debtor or Standard ever terminated Standard's agency relationship. In fact, Charles Reynolds (Debtor's President) asserts that post-petition he reaffirmed to Aaron Kingston (Standard's Contract Administrator) that the Debtor and Standard would continue to conduct business as they had before the involuntary petition was filed.

12. On September 26, 2008, an order for relief was entered.

13. The Debtor's case was converted to a case under chapter 7 on November 13, 2008, and Kenneth A. Rushton was appointed to serve as the chapter 7 trustee (Trustee).

14. From the date of the involuntary petition to the date of the Trustee's appointment, (GAP Period), the Coal Purchasers made payments to Standard for coal purchased pursuant to their purchase agreements with Debtor (GAP Period Payments).

15. For purposes of this summary judgment motion, the Court assumes the Coal Purchasers' GAP Period Payments were debts that were property of the bankruptcy estate.

### III. DISCUSSION

Notwithstanding the Trustee's extensive briefing and arguments, the matter before the Court does not require an exhaustive analysis of facts and law that are not relevant to the narrow issue in this motion. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. A fact is

"material" if, under the governing law, it could have an effect on the outcome of the lawsuit.[2] Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.[3]  There is no genuine dispute that Standard acted as the Debtor's agent for purposes of coal sales prior to the GAP Period.  Because it is not alleged that either the Debtor or Standard voluntarily terminated the agency relationship, Standard would be authorized to continue to act as the Debtor's agent unless its agency was involuntarily terminated by operation of law.  Although the Trustee argues that Standard was precluded from receiving Coal Purchaser payments for the Debtor because of the Writs of Garnishment and because § 542(b) requires that the Coal Purchasers pay the Debtor, he does not squarely address the termination of Standard's agency and its right to receive payments for coal mined by the Debtor.

**A. The Writs of Garnishment Did Not Terminate Standard's Agency.**

The legal effect of the Writs of Garnishment is a disputed issue, but the dispute is not material to the pending motion.  The Trustee's assertion that the Writs of Garnishment precluded Standard from receiving the TVA payment fails to address the broader agency issue in this matter.  Nothing in the Writs of Garnishment purport to, either expressly or impliedly, terminate Standard's agency relationship with the Debtor.  Writs of garnishment may impact an agent's legal ability to receive payments on behalf of a principal, but they do not terminate agency relationships.

**B. The Involuntary Petition Did Not Terminate Standard's Agency.**

---

[2] *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

There is nothing in the Bankruptcy Code that suggests agency agreements terminate upon the filing of an involuntary petition. One purpose of the Bankruptcy Code is to accord the debtor a "breathing space" to assume or reject executory contracts.[4] To argue that the filing of a chapter 11 petition operates to automatically terminate a debtor's agency relationship runs counter to the purpose of providing the debtor this "breathing space." If the filing of a voluntary chapter 11 petition precludes a debtor in possession from acting through its agents, many chapter 11 debtors in possession, particularly debtors with large and complex business operations, would be unable to conduct normal business activities. Accordingly, the agency agreement between Standard and the Debtor did not terminate as a result of the filing of the Debtor's involuntary bankruptcy petition.

## C. A Debtor In Possession May Act Through Agents.

The Trustee argues that pursuant to § 542 the Coal Purchasers could only pay the Debtor for coal they purchased. The only reasonable inference that can be drawn from the Trustee's argument that Standard could not receive GAP Period Payments, is that the filing of the involuntary petition terminated Standard's agency or precluded Standard from acting as Debtor's agent. In support of this position, the Trustee extensively cites this Court's ruling in another adversary proceeding for the proposition that a gap-period debtor in possession in an involuntary chapter 11 case is a trustee for purposes of § 542(b). The flaw in the Trustee's position is not his contention that a chapter 11 gap-period debtor in possession is a trustee for purposes of § 542(b), but his conclusion that a gap-period debtor may not act through agents.

---

[4] *Gen. Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.)*, 1 F.3d 1130, 1134 (10th Cir. 1993).

**D. The Debtor Had All the Rights and Duties of a Chapter 11 Trustee.**

An involuntary chapter 11 case is commenced when the petition is filed.[5] As defined in § 101(13), "debtor" means a person concerning which a case under the bankruptcy code has been commenced.[6] A person becomes a debtor when an involuntary petition is filed, not when the order for relief is entered. A "debtor in possession" means a debtor in a chapter 11 case, except when a person that has qualified under § 322 is serving as a trustee.[7] Subject to limitations not applicable here, a debtor in possession has all the rights and powers, and shall perform all the functions and duties of a trustee under chapter 11.[8] The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.[9] When a statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.[10] There is no ambiguity in the foregoing statutory provisions. Treating a debtor in an involuntary chapter 11 case during the "gap" as a debtor in possession, with all the rights, powers and duties of a trustee, is not demonstrably at odds with the legislative intent, is not absurd, and does no violence to the Bankruptcy Code.

---

[5] § 303(a).

[6] § 101(13).

[7] § 1101(1).

[8] § 1107(a).

[9] *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026 (1989) (citation omitted).

[10] *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023 (2004) (citation omitted).

**1. Section 542(b) Does Not Terminate Agency Relationships**. The Trustee contends that the Coal Purchasers did not satisfy their debt to the Debtor because § 542(b) precluded Standard from receiving the GAP Period Payments on behalf of the Debtor. Section 542(b) provides that an entity that owes a debt that is property of the estate shall pay the debt to, or on the order of, the trustee. The Trustee argues, without any legal authority, that this language obligated the Coal Purchasers to pay the Debtor, not Standard, and that they remain liable on the debt because they paid the wrong entity. To the extent the Trustee is arguing that § 542(b) terminates agency relationships, the argument has no merit.

**2. An Involuntary Debtor May Act Through Agents.** Because of the potential mischief from improper involuntary petitions, there is an even stronger argument that the filing of an involuntary petition does not terminate agency relationships or preclude a debtor from acting through agents. There is no conflict between § 542(b) and § 303(f) as argued by the Trustee. Section 303(f) provides that "any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced."[11] The language of § 303(f) specifically permitted the Debtor to continue to operate its business as if an involuntary case had not been commenced, including the continued use of Standard as its agent for purposes of coal sales and the receipt of payments for coal mined by the Debtor.

## CONCLUSION

Pre-petition, Standard acted as the Debtor's agent for the sale of coal, including receipt of payments for coal mined by the Debtor. Standard's agency relationship with the Debtor was

---

[11] § 303(f).

not voluntarily terminated and did not terminate by operation of law upon the filing of the Debtor's involuntary bankruptcy petition. The Writs of Garnishment issued by the United States District Court did not terminate Standard's agency relationship with the Debtor,[12] and §§ 303(f) and 542(b) permitted Standard to act as the Debtor's agent to collect coal proceeds from the Coal Purchasers during the Gap Period. Accordingly, Standard had authority to request and receive payments from the Coal Purchasers during the Gap Period.

----------------------------------------------End of Document--------------------------------------------------

---

[12] The Court makes no ruling, at this time, on the propriety of Standard's disposition or use of the accounts receivables and the Court makes no ruling, at this time, on whether any of the receivables were paid in violation of the United States District Court's Writs of Garnishment.

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **Findings and Conclusions Regarding Coal Purchasers' Motion for Summary Judgment** shall be served to the parties and in the manner designated below:

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users and will be served notice of entry of the foregoing Order through the CM/ECF system:

  Richard J. Armstrong    rarmstrong@kmclaw.com
  J. Thomas Beckett    tbeckett@parsonsbehle.com, ecf@parsonsbehle.com; kstankevitz@parsonsbehle.com
  David P. Billings    david.billings@akerman.com, aubery.mitchell@akerman.com, tracey.wayne@akerman.com
  Glenn R. Bronson    grb@princeyeates.com, kathryn@princeyeates.com
  P. Matthew Cox    bankruptcy_pmc@scmlaw.com
  Daniel Dansie    dcd@princeyeates.com
  Melyssa D. Davidson    mdd@pkhlawyers.com, tm@pkhlawyers.com
  Mark W. Dykes    ecf@parsonsbehle.com, mdykes@parsonsbehle.com
  Douglas Farr    dfarr@swlaw.com, docketslc@swlaw.com;phaslam@swlaw.com
  Tyler S. Foutz    tyler@osnlaw.com, secretary@osnlaw.com
  Peter W. Guyon    pguyon@yahoo.com
  David R. Hague    dhague@fabianlaw.com, dromero@fabianlaw.com
  John P. Hickey    jhickey@brouse.com
  T. Jake Hinkins    jake@andersonhinkins.com
  George B. Hofmann    gbh@pkhlawyers.com, dh@pkhlawyers.com
  Vernon L. Hopkinson    vern@crslaw.com
  Craig H. Howe    howe@millerguymon.com
  Mary Margaret Hunt    hunt.peggy@dorsey.com, long.candy@dorsey.com; smith.ron@dorsey.com; slc.lit@dorsey.com
  Conrad H. Johansen    conrad@osnlaw.com, secretary@osnlaw.com
  Penrod W. Keith    pkeith@djplaw.com, khughes@djplaw.com
  Danny C. Kelly    dckelly@stoel.com, docketclerk@stoel.com,amliddell@stoel.com
  Carl E. Kingston    carlkingston@yahoo.com, cjo@deklawoffice.com
  David E. Kingston    davidekingston@yahoo.com, cjo@deklawoffice.com
  Benjamin J. Kotter    kotter.benjamin@dorsey.com, bingham.karen@dorsey.com; slc.lit@dorsey.com
  David E. Leta    dleta@swlaw.com, wsmart@swlaw.com
  Adelaide Maudsley    maudsley@chapman.com, jemery@chapman.com

Steven J. McCardell   smccardell@djplaw.com, khughes@djplaw.com
Edward C. Meade   ecmeade@tva.gov
Blake D. Miller   miller@millerguymon.com, millermobile@gmail.com; miller@ecf.inforuptcy.com
Jessica G Peterson   jpeterson@djplaw.com, khughes@djplaw.com
David L. Pinkston   bankruptcy_dlp@scmlaw.com
David L. Pinkston   bankruptcy_dlp@scmlaw.com
Daniel D. Price   daniel.price2@usdoj.gov, becky.bardago@usdoj.gov
Knute A. Rife   KARife@RifeLegal.com
Richard E. Riggs   reriggs@tva.gov, ogcecffiles@tva.gov
Jerome Romero   jromero@joneswaldo.com, bparry@joneswaldo.com
Chris L. Schmutz   chrisschmutz.pc@gmail.com, hillaryschmutz@yahoo.com
Robert H. Scott   robert.scott@akerman.com, toni.domres@akerman.com; debby.esler@akerman.com; michelle.milne@akerman.com; aubrey.mitchell@akerman.com; tracey.wayne@akerman.com
Jeffrey L. Shields   jlshields@cnmlaw.com, njpotter@cnmlaw.com
Jeremy C. Sink   jeremy@mbt-law.com
Quinn A. Sperry   qsperry@mbt-law.com
Steven C. Strong   scs@pkhlawyers.com, jh@pkhlawyers.com
Gerald H. Suniville   gsuniville@vancott.com, docketing@vancott.com
Russell S. Walker   rwalker@wklawpc.com, ckirk@wklawpc.com
Steven T. Waterman   waterman.steven@dorsey.com, bingham.karen@dorsey.com
David R. Williams   dwilliams@wklawpc.com, kmacrae@wklawpc.com
Kim R. Wilson   bankruptcy_krw@scmlaw.com
Brent D. Wride   bwride@rqn.com, docket@rqn.com;agruninger@rqn.com
Michael N. Zundel   mnz@princeyeates.com, sara@princeyeates.com; docket@princeyeates.com;dcd@princeyeates.com; kathleen@princeyeates.com; hdp@princeyeates.com; carolp@princeyeates.com; tow@princeyeates.com